UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
<u>(For Electronic Publication Only)</u>
------------------------------------------------------------------------X
DALE ROBERT JAVINO,

                                Plaintiff,       **MEMORANDUM & ORDER**
                                                 22-cv-01072-JMA-ARL

          -against-

RANEE DENTON *et al.*,

                              Defendants.
------------------------------------------------------------------------X

**FILED**
**CLERK**
9/13/2024 10:58 am
**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**AZRACK, United States District Judge:**

       On February 28, 2022, <u>Pro Se</u> Plaintiff Dale Robert Javino filed a complaint asserting claims (1) under the substantive provisions of the Racketeer Influence and Corrupt Organizations Act; (2) for bank fraud; (3) for money laundering; (4) for computer privacy violations; and (5) for civil conspiracy to defraud. (ECF No. 1 ("Compl.").) Each of the named defendants move to dismiss Plaintiff's complaint. Specifically, Defendants Julie Pratt and Bridgehampton National Bank ("BNB Defendants") move to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 45 ("BNB Defs.' Mot.").) Defendants Alan B. Rosen and Bi-Yech Enterprise, Inc. ("Rosen Defendants") move to dismiss Plaintiff's complaint under Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6). (ECF No. 46 ("Rosen Defs.' Mot.").) Defendants Ranee Denton, Craig Purcell, Timothy B. Glynn, and Glynn, Mercep & Purcell LLP ("Denton Defendants") move to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 48 ("Denton Defs.' Mot.").) In response, Plaintiff cross-moves for summary judgment. (ECF No. 42 ("Pl.'s Cross. SJ Mot.").)

       For the below reasons, the Court GRANTS each defendants' motions to dismiss, DENIES Plaintiff's cross-motion for summary judgment, and DISMISSES the Plaintiff's <u>pro se</u> complaint without prejudice with leave to file an amended complaint within 45 days of entry of this Order.

# I.    BACKGROUND[1]

## A.    Factual Background

This matter concerns Plaintiff's interest in limited liability companies associated with the ownership and operation of a marina.  (Compl. ¶ 13.)  Plaintiff and Defendant Denton were involved in a personal relationship beginning around 2012.  (Ex. A, at 7, ECF No. 40-1 ("NYS Decision").)  On August 30, 2013, Defendant Denton loaned Plaintiff $400,000 dollars, and on June 12, 2014, she extended another loan to Plaintiff for $50,000 dollars.  (Id.)  During this time, the two entered a business relationship with the intent to purchase Senix Marina.  (Id.)

In May 2014, Plaintiff and Defendant Denton entered into an operating agreement to share in the ownership of Senix Acquisitions LLC, which governed the management and operation of the marina.  (Compl. ¶ 14.)  The operating agreement designated the two as sole members with equal shares and management rights.  (NYS Decision at 7.)  Thereafter, Plaintiff and Defendant Denton purchased the Senix Marina.  (Compl. ¶ 15.)  Defendant Denton provided all the funds for the purchase of the marina which totaled $1.1 million dollars, and Plaintiff's ownership interest was conditioned upon the execution of a promissory note in favor of Defendant Denton for $550,000, plus one-half of all closing costs that she advanced.  (NYS Decision at 7.)  Moreover, the agreement explicitly provided the promissory note to "be executed at the time of closing," and that "failure" to do so would subject Plaintiff's shares to forfeiture.  (NYS Decision at 8.)  The agreement also required Plaintiff to execute an assignment of ownership at the closing to ensure

---

[1]    This Memorandum and Order draws its facts from Plaintiff's complaint (ECF No. 1 ("Compl.")); Plaintiff's Memorandum of Law in Support of his Cross-Motion for Summary Judgment (ECF No. 42 ("Pl.'s Cross. SJ Mot.")); Defendant Pratt and Defendant BNB's Memorandum of Law in Support of their Motion to Dismiss (ECF No. 45 ("BNB Defs.' Mot.")); Defendant Rosen and Bi-Tech Enterprises, Inc.'s Memorandum of Law in Support of their Motion to Dismiss (ECF No. 46 ("Rosen Defs.' Mot.")); Defendant Denton, Defendant Purcell, Defendant Glynn, and Defendant Glynn, Mercep & Purcell LLP's Memorandum of Law in Support of their Motion to Dismiss (ECF No. 48 ("Denton Defs.' Mot.")); Defendant Denton, Defendant Purcell, Defendant Glynn, and Defendant Glynn, Mercep & Purcell LLP's Memorandum of Law in Opposition to Plaintiff's Cross-Motion for Summary Judgment (ECF No. 57 ("Denton Defs.' Opp.")); Plaintiff's Memorandum of Law in Reply to his Cross-Motion for Summary Judgment (ECF No. 58 ("Pl.'s Cross. SJ Rep.")), and the declarations and exhibits attached to all the above-mentioned filings.

that he obtained an ownership interest upon satisfaction of the condition precedent.  (Id.)  Plaintiff did not satisfy either condition, nor did he repay either of the loans from Defendant Denton, resulting in a judgment in the amount of $527,749.55 filed in Suffolk County, New York, on September 28, 2016, and Defendant Denton commencing litigation against Plaintiff.  (Id.) Evidence adduced at the trial of the matter in New York state court indicated that Plaintiff formed Senix Yacht Co. in direct competition with the marina and in violation of the operating agreement's non-compete clause.  (Id.)  The evidence further showed, among other things, that Plaintiff barely worked or made any meaningful contribution to the marina's business.  (Id.)  In its trial decision, the court held that Defendant Denton established that her business would suffer serious and irreparable harm absent an injunction, thereby granting the permanent injunctive relief as asserted in her complaint dated January 8, 2015.  (Id.)

Plaintiff tells a different story.  In October 2014, Plaintiff suspected Defendant Denton was misappropriating funds from Senix Acquisitions LLC and hired a forensic accountant to investigate the situation. (Compl. ¶ 18.)  In December 2014, Plaintiff alleges Defendant Denton retained legal counsel and began to "concoct[] and put together a strategy to permanently enjoin [Plaintiff] from the marina and the companies [he] formed."  (Compl. ¶ 19.)  In January 2015, Plaintiff alleges he was served with a preliminary injunction to keep him off the marina property. (Id.)  As mentioned, Plaintiff and Defendant Denton have continued to litigate their dispute in New York state court since January 2015.

## B.   <u>Procedural History</u>

On February 28, 2022, Plaintiff commenced this action in federal court contending that Defendant Denton, her attorneys, and several others violated various substantive sections of Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68.  (Compl. ¶¶ 32–49.)  Read liberally, Plaintiff's complaint further asserts claims for (1) bank fraud; (2) money

laundering; (3) computer privacy violations; and (4) civil conspiracy to defraud.  (Compl. ¶¶ 50–64.)

On May 18, 2022, before any party had been served or joined, Plaintiff filed a motion by order to show cause seeking a preliminary injunction and temporary restraining order.  (ECF No. 6.)  This Court denied that motion on the same day.  (Elec. Order dated May 18, 2022.)  On July 19, 2022, this Court stayed this matter due to the underlying state court litigation between Plaintiff and Defendant Denton.  (Elec. Order dated Jul. 19, 2022.)  The Court lifted that stay on October 20, 2023.  (Elec. Order dated Oct. 20, 2023.)  Each defendant named in this action eventually moved to dismiss Plaintiff's complaint.  (ECF Nos. 40, 45, 46, 48.)  Plaintiff never opposed any of the defendants' motions to dismiss, but he did cross-move for summary judgment on his claims. (ECF No. 42.)

## II.      DISCUSSION

### A.    <u>Motions to Dismiss</u>

Each of the named defendants move to dismiss Plaintiff's complaint.  Specifically, Defendants Julie Pratt and BNB move to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6).  (BNB Defs.' Mot.)  Defendants Alan B. Rosen and Bi-Yech Enterprise, Inc.' move to dismiss Plaintiff's complaint under Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6).  (Rosen Defs.' Mot.)  And Defendants Ranee Denton, Craig Purcell, Timothy B. Glynn, and Glynn, Mercep & Purcell LLP move to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6).  (Denton Defs.' Mot.)  For the below reasons, the Court grants each defendant's motion to dismiss the claims against it.

### 1.      Applicable Law.

The Court begins with a brief discussion of relevant legal principles before addressing each of the defendants' claims in turn.

a)      *Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(2).*

Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction.  See generally FED. R. CIV. P. 12(b)(2).  On a Rule 12(b)(2) motion, "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant."  Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996).  At the pleading stage, a plaintiff need only make "legally sufficient allegations of jurisdiction."  Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990).  In assessing whether this standard is met, a court will construe a plaintiff's allegations "in the light most favorable to the plaintiff," and resolve all doubts "in the plaintiff's favor[.]"  Elsevier, Inc. v. Grossman, 77 F. Supp. 3d 331, 341 (S.D.N.Y. 2015) (quoting A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79–80 (2d Cir. 1993)).  But the court will neither "draw argumentative inferences in the plaintiff's favor" nor "accept as true a legal conclusion couched as a factual allegation."  In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks and citations omitted); accord Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 59 (2d Cir. 2012).

District courts deciding a motion to dismiss for lack of personal jurisdiction engage in a two-part analysis.  See generally Bailon v. Pollen Presents, 2023 WL 5956141, at *4 (S.D.N.Y. Sept. 13, 2023).  First, the court "must establish whether there is 'a statutory basis for exercising personal jurisdiction'" over the defendant.  Elsevier, 77 F. Supp. 3d at 341 (quoting Marvel Characters, Inc. v. Kirby, 726 F.3d 119, 128 (2d Cir. 2013)).  In a federal-question case, as here, this statutory basis is typically provided by the forum state's long-arm statute, unless the federal statute under which the case arises "specifically provide[s] for national service of process."[2]  PDK

---

[2]      New York's long-arm statute authorizes courts to exercise personal jurisdiction "over any non-domiciliary ... who in person or through an agent ... transacts any business within the state," so long as the cause of action "aris[es] from" that transaction.  N.Y. C.P.L.R. § 302(a)(1).  Accordingly, a court may exercise personal jurisdiction over a non-domiciliary if two conditions are met: "first, the non-domiciliary must transact business within the state; second,

Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997) (internal quotation marks omitted).

Second, the court "must decide whether the exercise of jurisdiction comports with due process,"

that is, it must ensure that the exercise of jurisdiction does not offend the Due Process Clause of

the U.S. Constitution.  Elsevier, 77 F. Supp. 3d at 341 (citing Sonera Holding B.V. v. Çukurova

Holding A.S., 750 F.3d 221, 224 (2d Cir. 2014)).  The due process inquiry requires the court to

further establish both that (i) the nonresident defendant has sufficient contacts with the forum state

to justify the court's exercise of personal jurisdiction and (ii) the court's exercise of jurisdiction

does not offend "traditional notions of fair play and substantial justice."  International Shoe

Company v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

> b)   *Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(5).*

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural

requirement of service of summons must be satisfied."  Omni Capital Int'l, Ltd. v. Rudolf Wolff

& Co., Ltd., 484 U.S. 97, 104 (1987).  Under Rule 12(b)(5), "[o]nce a defendant raises a challenge

to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy."

Darden v. DaimlerChrysler N. Am. Holding Corp., 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002).

"When a court considers a motion to dismiss pursuant to Rule 12(b)(5), it must consider

information outside the complaint to determine whether service was sufficient." Hernandez v.

Mauzone Home Kosher Prods. of Queens, Inc., 2013 WL 5460196, at *4 (E.D.N.Y. Sept. 30,

2013).

"In deciding a Rule 12(b)(5) motion, a Court must look to Rule 4, which governs the

content, issuance, and service of a summons."  DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54,

---

the claims against the non-domiciliary must arise out of that business activity."  Aquiline Capital Partners LLC v. FinArch LLC, 861 F. Supp. 2d 378, 386 (S.D.N.Y. 2012) (quoting CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986)).

64 (S.D.N.Y. 2010).  Under Rule 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  FED. R. CIV. P. 4(m).  If the plaintiff can demonstrate good cause, however, a district court must grant a plaintiff an extension of time for service.  See id.

Even where a plaintiff does not show good cause, district courts may exercise discretion to grant an extension of time to effect adequate service.  See Zapata v. City of New York, 502 F.3d 192, 196 (2d Cir. 2007); see also George v. Prof'l Disposables Int'l, Inc., 221 F. Supp. 3d 428, 433 (S.D.N.Y. 2016).  In determining whether to grant a discretionary extension, courts look to "[i] whether any applicable statutes of limitations would bar the action once refiled; [ii] whether the defendant had actual notice of the claims asserted in the complaint; [iii] whether defendant attempted to conceal the defect in service; and [iv] whether defendant would be prejudiced by extending plaintiff's time for service."  DeLuca, 695 F. Supp. 2d at 66.

> c)  *Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6).*

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Allco Fin. Ltd. v. Klee, 861 F.3d 82, 94–95 (2d Cir. 2017) (quoting Iqbal, 556 U.S. at 678).  "[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (internal quotations and citation omitted, and alterations adopted); see also Rolon v. Henneman, 517 F.3d

7

140, 149 (2d Cir. 2008) (explaining that a court need not accept "conclusory allegations or legal conclusions masquerading as factual conclusions") (internal citation omitted).

When—as here—the plaintiff is proceeding pro se, his complaint is "held to [a] less stringent standard[ ] than formal pleadings drafted by lawyers." Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008) (internal quotations omitted).  A district court must actively "interpret [his complaint] 'to raise the strongest arguments that [it] suggest[s].'" McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).  Unless it is "beyond doubt" that a pro se plaintiff may "prove no set of facts in support of his claim[s] which would entitle him to relief," his complaint should not be dismissed.  Thomas & Agnes Carvel Found. v. Carvel, 736 F. Supp. 2d 730, 756 (S.D.N.Y. 2010) (quoting Leibowitz v. Cornell Univ., 445 F.3d 586, 590 (2d Cir. 2006)).  "That said, the liberal pleading standard accorded to pro se litigants is not without limits, and all normal rules of pleading are not absolutely suspended." Hill v. City of N.Y., No. 13-cv-8901 (KPF), 2015 WL 246359, at *2 (S.D.N.Y. Jan. 20, 2015) (internal quotations and citation omitted).  A pro se plaintiff's factual allegations still must at least "be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

A court adjudicating a motion to dismiss under Rule 12(b)(6) "may review only a narrow universe of materials." Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016).  This narrow universe includes the "facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken." Id. (internal citation omitted and alternations adopted); see also United States ex rel. Foreman v. AECOM, 19 F.4th 85, 106 (2d Cir. 2021).  That said, the Court "may also look to public records, including complaints filed in state court, in deciding a motion to dismiss" under Rule 12(b)(6). Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts, 369 F.3d 212, 217 (2d Cir. 2004); see also Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991) (holding

8

that courts may take judicial notice of public disclosure documents the filing of which is required by law.  "In the motion to dismiss context, however, a court should generally take judicial notice 'to determine what statements [the documents] contain[ ] ... not for the truth of the matters asserted.'"  Schubert v. City of Rye, 775 F. Supp. 2d 689, 698 (S.D.N.Y. 2011) (alterations in original) (quoting Kramer, 937 F.2d at 774).

Additionally, "[a]lthough the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."  Thea v. Kleinhandler, 807 F.3d 492, 501 (2d Cir. 2015) (quoting Ellul v. Congregation of Christian Bros., 774 F.3d 791, 798 n.12 (2d Cir. 2014)).

d)    *Heightened Pleading Requirements for Fraud Claims Under Federal Rule of Civil Procedure 9(b).*

Plaintiffs alleging fraud claims face additional, heightened pleading requirements beyond those enumerated above.  See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007).  These heightened requirements are circumscribed by Federal Rule of Civil Procedure Rule 9(b).  Compare FED. R. CIV. P. 8 (describing "General Rules of Pleading"), with FED. R. CIV. P. 9(b) (setting forth requirements of "alleging fraud or mistake").  Rule 9(b) requires a plaintiff alleging fraud to "state with particularity the circumstances constituting [the] fraud," FED. R. CIV. P. 9(b); namely, "[i] specify the statements that the plaintiff contends were fraudulent, [ii] identify the speaker, [iii] state where and when the statements were made, and [iv] explain why the statements were fraudulent," ATSI, 493 F.3d at 99 (citation omitted).  While Rule 9(b) demands specificity as to the circumstances of an alleged fraud, it allows a plaintiff to "allege[ ] generally" any requisite state of mind, e.g., "[m]alice, intent, [or] knowledge[.]"  FED. R. CIV. P. 9(b).

9

2.    **Analysis.**

    a)    *The Court Grants Defendant Pratt and Defendant BNB's Motion to Dismiss.*

Defendants Julie Pratt and BNB ("BNB Defendants") move to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6).  For the below reasons, the Court grants their motion and dismisses the claims against them.

    (1)    Plaintiff's Claims are Barred by the Statute of Limitations.

As a preliminary matter, Plaintiff's purported claims against the BNB Defendants are barred by the applicable statutes of limitations.

"Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."  Ellul, 774 F.3d at 798 n.12 (citation omitted); see also Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss.").  "Because the statute of limitations is an affirmative defense, the defendant bears the burden of establishing by prima facie proof that the limitations period has expired since the plaintiff's claims accrued."  Overall v. Estate of Klotz, 52 F.3d 398, 403 (2d Cir. 1995); see also Gonzalez v. Hasty, 651 F.3d 318, 322 (2d Cir. 2011) ("[T]he burden is on the defendant to establish when a federal claim accrues.").  If it appears from the face of a complaint that the claims are prima facie time-barred, the burden is on the plaintiff to "plausibly alleg[e] that they fall within an exception to the applicable statute of limitations." Twersky v. Yeshiva Univ., 993 F. Supp. 2d 429, 436 (S.D.N.Y. 2014), aff'd, 579 F. App'x 7 (2d Cir. 2014) (summary order) (citing cases).

Civil RICO claims are governed by a four-year statute of limitations which "begins to run when the plaintiff discovers or should have discovered the RICO injury," such that the plaintiff has "actual or inquiry notice of the injury." In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 58, 60 (2d Cir. 1998). A plaintiff need not have known of the cause of action for the limitations period to begin; instead, the four-year period begins upon "discovery of the injury, not discovery of the other elements of the claim." Koch v. Christie's Int'l PLC, 699 F.3d 141, 148 (2d Cir. 2012) (quoting Rotella v. Wood, 528 U.S. 549, 555 (2000)). Accordingly, "[t]he first step in the statute of limitations analysis is to determine when the [parties] sustained the alleged injury for which they seek redress." Merrill Lynch, 154 F.3d at 59. The Court "then determine[s] when they discovered or should have discovered the injury and begin[s] the four-year statute of limitations period at that point." Id.

Under New York law, "an action based upon fraud" must be commenced within "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff ... discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. § 213(8). Under N.Y. C.P.L.R. § 213(8), "the six year prong of this limitations period begins to run from the time that a plaintiff actually suffers a loss as a result of the fraudulent conduct." Hemmerdinger Corp. v. Ruocco, 976 F. Supp. 2d 401, 408 (E.D.N.Y. 2013). Thus, the standard for determining when a Plaintiff is on inquiry notice sufficient to trigger the statute of limitations for a civil RICO claim is like that for fraud under New York law. See Cohen, 711 F.3d at 361.

It is Plaintiff's burden to show "that the fraud could not have been discovered before the two-year period prior to the commencement of the action." Hemmerdinger, 976 F. Supp. 2d at 408 (quoting Guilbert v. Gardner, 480 F.3d 140, 147 (2d Cir. 2007)). A plaintiff's duty to inquire "is triggered by information that relates directly to the misrepresentations and omissions the Plaintiff[ ] later allege[s] in [its] action against the defendants." Cohen, 711 F.3d at 361 (internal

11

quotation marks and citation omitted).  Mere suspicion will not suffice; rather, a plaintiff must have "knowledge of the fraudulent act." Sargiss v. Magarelli, 12 N.Y.3d 527, 532 (2009).  "Where it does not conclusively appear that a plaintiff had knowledge of facts from which the fraud could reasonably be inferred, a complaint should not be dismissed on motion and the question should be left to the trier of the facts."  Id.  However, "[t]he triggering information need not detail every aspect of the subsequently alleged fraudulent scheme," and "the date on which knowledge of a fraud will be imputed to a plaintiff can depend on the plaintiff's investigative efforts."  Cohen, 711 F.3d at 361 (internal quotation marks and editing omitted).  Therefore, "[i]f the plaintiff makes no inquiry once the duty to inquire arises, knowledge will be imputed as of the date the duty arose." Id. (internal quotation marks and citation omitted).

Here, Plaintiff alleges that the "conspiracy" and scheme which underlies his claims against the BNB Defendants "commenced on or about July 2014." (Compl. ¶ 59.)  Plaintiff also alleges that Defendant Pratt "at the time of 2014 to 2016 ... opened bank accounts for Ranee Denton," which Plaintiff purports was part of the scheme to defraud him.  (Compl. ¶ 52.)  Plaintiff acknowledges that he first became aware the possible fraud in October 2014 when he questioned Defendant Denton about the loss of money and hired a forensic accountant. (Compl. ¶ 18.)  Thus, Plaintiff was aware of any allegedly fraudulent scheme in 2014.  Moreover, Plaintiff has purportedly been shut out of the LLCs and the marina since January 2015.  (Compl. ¶ 19.)  He has also consistently been involved in litigation regarding these issues since January of that year.  (Id.) As such, Plaintiff's civil RICO, fraud, and civil conspiracy causes of action all accrued, at the latest, in 2015.  Because Plaintiff did not file this action until February 2022, his civil RICO, fraud, and civil conspiracy claims against the BNB Defendants are barred by the applicable statutes of limitations.

(2)      Plaintiff Fails to State a Claim Under Rule 12(b)(6).

Even if Plaintiff's causes of action against the BNB Defendants were not time barred, Plaintiff nonetheless fails to state a viable cause of action.

(a)      <u>Civil RICO</u>

Plaintiff fails to plead the elements of a civil RICO claim. To sustain a private right of action under RICO, a plaintiff must plead "[i] the defendant's violation of [18 U.S.C] § 1962, [ii] an injury to the plaintiff's business or property, and [iii] causation of the injury by the defendant's violation." <u>Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.</u>, 271 F.3d 374, 380 (2d Cir. 2001). To plead a substantive civil RICO claim under 18 U.S.C. § 1962(c), "a plaintiff must show that a person engaged in [i] conduct [ii] of an enterprise [iii] through a pattern [iv] of racketeering activity." <u>Cruz v. FXDirectDealer, LLC</u>, 720 F.3d 115, 120 (2d Cir. 2013) (internal quotation marks omitted); <u>see generally</u> <u>In re Tether & Bitfinex Crypto Asset Litig.</u>, 576 F. Supp. 3d 55, 114–27 (S.D.N.Y. 2021).

As to RICO claims predicated on alleged fraud, as here, "Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard." <u>Black v. Ganieva</u>, 619 F. Supp. 3d 309, 342 (S.D.N.Y. 2022). Such claims must "state with particularity the circumstances constituting fraud." F<small>ED</small>. R. C<small>IV</small>. P. 9(b). To satisfy Rule 9(b), a complaint must "allege facts that give rise to a strong inference of fraudulent intent." <u>Berman v. Morgan Keegan & Co.</u>, 455 F. App'x 92, 95 (2d Cir. 2012) (summary order) (quoting <u>Acito v. IMCERA Grp., Inc.</u>, 47 F.3d 47, 52 (2d Cir. 1995)). Specifically, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent," <u>Lerner v. Fleet Bank, N.A.</u>, 459 F.3d 273, 292–93 (2d Cir. 2006) (internal quotation marks omitted). <u>See also</u> <u>United States ex rel. Ladas v. Exelis, Inc.</u>, 824 F.3d 16, 25–26 (2d Cir. 2016) ("The purpose of Rule 9(b) is threefold—it is designed to

13

provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." (quoting O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991))).

Here, among other deficiencies, Plaintiff's complaint does not adequately plead that the BNB Defendants were part of a RICO enterprise. "The Supreme Court has explained that a RICO enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct,' the existence of which is proven 'by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" First Cap. Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 173 (2d Cir. 2004) (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)). It is well settled that merely providing professional services, including general banking services, that are also provided to the public at large, are insufficient to establish that an entity has participated in a RICO enterprise. See Rosner v. Bank of China, 528 F. Supp. 2d 419, 429 (S.D.N.Y. 2007) (holding that plaintiff insufficiently established that bank was part of a RICO enterprise where bank merely provided "indispensable banking services"); see also Flexborrow LLC v. TD Auto Fin. LLC, F. Supp. 3d 406, 416 (E.D.N.Y. 2017) (similar). Here, Plaintiff's only allegations regarding the BNB Defendants are that they assisted Defendant Denton in opening, updating, and maintaining bank accounts—services banks commonly provide to any of their customers. Thus, without more, Plaintiff has failed to establish that the BNB Defendants participated in a RICO enterprise. See First Cap. Asset Mgmt., Inc., 385 F.3d at 174 (concluding that plaintiffs did not allege an enterprise where they "failed to provide ... solid information regarding the 'hierarchy, organization, and activities' of this alleged association-in-fact enterprise," from which the court "could fairly conclude that its 'members functioned as a unit'" (quoting United States v. Coonan, 938 F.2d 1553, 1560–61 (2d Cir. 1991))). Because Plaintiff's Complaint does not plausibly allege the BNB Defendants were a part of a RICO enterprise, its RICO claim

14

against them fails.[3]  See D. Penguin Bros. v. City Nat'l Bank, 2014 WL 982859, at *4 (S.D.N.Y.

Mar. 11, 2014) ("The heart of any civil RICO claim is the enterprise.  There can be no RICO

violation without one."), aff'd, 587 F. App'x 663, 2014 WL 5293242 (2d Cir. Oct. 16, 2014)

(summary order).

(b)     Bank Fraud

Plaintiff also fails to set forth allegations with sufficiently particularity to state a claim for

fraud against the BNB Defendants as is required under Federal Rule of Civil Procedure 9(b).  To

state a claim for fraud, including bank fraud, a plaintiff must "(1) specify the statements that the

plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements

were made, and (4) explain why the statements were fraudulent."  Nakahata v. New York-

Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 197 (2d Cir. 2013) (quoting Mills v. Polar

Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993) (citation omitted)).  "Although scienter need

not be alleged with great specificity, plaintiffs are still required to plead the factual basis which

gives rise to a 'strong inference' of fraudulent intent.  Wexner v. First Manhattan Co., 902 F.2d

169, 172 (2d Cir. 1990) (quoting Beck v. Manufacturers Hanover Trust Co., 820 F.2d 46, 50 (2d

Cir. 1987), cert. denied, 484 U.S. 1005 (1988)).

Here, Plaintiff states—in conclusory fashion—that the BNB Defendants are "liable for a

million dollars in damages for assisting in the fraudulent transactions" of Defendant Denton.

(Compl. ¶ 53.)  Such allegations, without more, are insufficient to state a claim for fraud against

---

[3]      For similar reasons, Plaintiff also fails to establish that the BNB Defendants participated in a RICO scheme.
"A person may not be held liable merely for taking directions and performing tasks that are 'necessary and helpful to
the enterprise,' or for providing 'goods and services that ultimately benefit the enterprise.'"  U.S. Fire Ins. Co. v.
United Limousine Serv., Inc., 303 F. Supp. 2d 432, 451–52 (S.D.N.Y. 2004) (citations omitted).  Instead, "'the RICO
defendant must have played 'some part in directing [the enterprise's] affairs.'"  Moss v. BMO Harris Bank, N.A., 258
F. Supp. 3d 289, 306 (E.D.N.Y. 2017) (internal citation omitted).  Here, Plaintiff entirely fails to plead that the BNB
Defendants played any part in "directing" the alleged enterprises' affairs.  Plaintiff merely alleges that the BNB
Defendants provided basic banking services to Defendant Denton.  As such, Plaintiff's civil RICO claim could be
dismissed on this ground as well.

the BNB Defendants under Federal Rule of Civil Procedure 9(b).  See Star Auto Sales of Queens LLC v. Iskander, 2022 WL 784520, at *4 (E.D.N.Y. Mar. 15, 2022).  Plaintiff's allegations are deficient because he does not allege that the BNB Defendants themselves ever made any fraudulent statements regarding Plaintiff.  See id.  Indeed, courts routinely find complaints run afoul of Rule 9(b) when a plaintiff fails to "state where and when" any of the allegedly fraudulent statements were made.  Nakahata, 723 F.3d at 197; see also Star Auto Sales of Queens LLC, 2022 WL 784520, at *4.  Moreover, Plaintiff does not allege that the BNB Defendants were aware of any purported fraud by Defendant Denton.  Plaintiff has therefore failed to plead fraud with the requisite specificity.

(c)    Civil Conspiracy

Finally, Plaintiff's cause of action for civil conspiracy and civil RICO conspiracy must be dismissed.

Although civil conspiracy is not an independent tort, but rather a means for imposing liability on non-actors, a plaintiff seeking to impose liability under this theory must, in addition to alleging an underlying tort, allege the following elements: "(1) a corrupt agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury."  Cagan v. Gadman, 2012 WL 1071275, at *4 (E.D.N.Y. Mar. 28, 2012); see also Bigio v. Coca–Cola Co., 675 F.3d 163, 176 (2d Cir. 2012).  As such, to the extent Plaintiff attempts to bring a separate cause of action for civil conspiracy, that cause of action must be dismissed.  See Douyon v. NY. Med. Health Care, P.C., 894 F. Supp. 2d 245, 273 (E.D.N.Y. 2012).

To the extent Plaintiff is attempting to plead a cause of action for a civil RICO conspiracy, that cause of action also fails.  "To plead such a conspiracy, a complaint must allege that a defendant agreed to participate in the affairs of the enterprise through a pattern of racketeering

16

activity." <u>Black</u>, 619 F. Supp. 3d at 329.  As the Second Circuit has stated, "[b]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." <u>Hecht v. Com. Clearing House, Inc.</u>, 897 F.2d 21, 25 (2d Cir. 1990).  And where a RICO conspiracy claim does not adequately plead an agreement to conduct which, if completed, would satisfy the elements of the substantive RICO statute, "the conspiracy claim under § 1962(d) also fails." <u>BWP Media USA Inc. v. Hollywood Fan Sites, LLC</u>, 69 F. Supp. 3d 342, 363 (S.D.N.Y. 2014) (citation omitted).  However, "the existence of a RICO enterprise is not a required element of a RICO conspiracy claim." <u>City of New York v. Bello,</u> 579 F. App'x 15, 17 (2d Cir. 2014) (summary order) (citing <u>United States v. Applins</u>, 637 F.3d 59, 76 (2d Cir. 2011)).

"A failure to plead any element of a claim, of course, requires its dismissal." <u>Black</u>, 619 F. Supp. 3d at 330.  Here, Plaintiff has not pleaded that the BNB Defendants ever agreed to participate in any racketeering activity.  As explained above, the BNB Defendants only provided basic banking services to Defendant Denton.  Indeed, Plaintiff does not allege that the BNB Defendants were even aware of some larger RICO conspiracy.  As such, the Court dismisses Plaintiff's civil conspiracy claims against the BNB Defendants.

*   *   *

Accordingly, the Court GRANTS Defendant Pratt and Defendant BNB's motion to dismiss the claims against them.

> b)   *The Court Grants Defendant Denton, Defendant Purcell, Defendant Glynn, and Defendant Glynn, Mercep & Purcell LLP's Motion to Dismiss.*

Defendants Ranee Denton, Craig Purcell, Timothy B. Glynn, and Glynn, Mercep & Purcell LLP ("Denton Defendants") move to dismiss Plaintiff's complaint under Federal Rule of Civil

Procedure 12(b)(6).  For the below reasons, the Court grants their motion and dismisses the claims against them.

(1)     Plaintiff's Claims are Barred by the Statute of Limitations.

Although not raised by the Denton Defendants specifically, "a court may raise [a statute of limitations defense] <u>sua sponte</u> when 'the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted.'"  <u>Weaver v. Boriskin</u>, 751 F. App'x 96, 98–99 (2d Cir. 2018) (quoting <u>Walters v. Indus. & Commercial Bank of China, Ltd.</u>, 651 F.3d 280, 293 (2d Cir. 2011)).

As mentioned, civil RICO claims are governed by a four-year statute of limitations which "begins to run when the plaintiff discovers or should have discovered the RICO injury," such that the plaintiff has "actual or inquiry notice of the injury."  <u>Merrill Lynch Ltd.</u>, 154 F.3d at 58, 60.  A plaintiff need not have known of the cause of action for the limitations period to begin; instead, the four-year period begins upon "discovery of the injury, not discovery of the other elements of the claim."  <u>Koch</u>, 699 F.3d at 148 (quoting <u>Rotella</u>, 528 U.S. at 555).  Accordingly, "[t]he first step in the statute of limitations analysis is to determine when the [parties] sustained the alleged injury for which they seek redress."  <u>Merrill Lynch</u>, 154 F.3d at 59.  The Court "then determine[s] when they discovered or should have discovered the injury and begin[s] the four-year statute of limitations period at that point."  <u>Id.</u>

Under New York law, "an action based upon fraud" must be commenced within "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff ... discovered the fraud, or could with reasonable diligence have discovered it."  N.Y. C.P.L.R. § 213(8).  Under N.Y. C.P.L.R. § 213(8), "the six year prong of this limitations period begins to run from the time that a plaintiff actually suffers a loss as a result of the fraudulent conduct."  <u>Hemmerdinger</u>, 976 F. Supp. 2d at 408.  Thus, the standard for determining when a Plaintiff is on

18

inquiry notice sufficient to trigger the statute of limitations for a civil RICO claim is like that for fraud under New York law.  See Cohen, 711 F.3d at 361.

It is Plaintiff's burden to show "that the fraud could not have been discovered before the two-year period prior to the commencement of the action." Hemmerdinger, 976 F. Supp. 2d at 408 (quoting Guilbert, 480 F.3d at 147).  A plaintiff's duty to inquire "is triggered by information that relates directly to the misrepresentations and omissions the Plaintiff[ ] later allege[s] in [its] action against the defendants."  Cohen, 711 F.3d at 361 (internal quotation marks and citation omitted). Mere suspicion will not suffice; rather, a plaintiff must have "knowledge of the fraudulent act." Sargiss, 12 N.Y.3d at 532.  "Where it does not conclusively appear that a plaintiff had knowledge of facts from which the fraud could reasonably be inferred, a complaint should not be dismissed on motion and the question should be left to the trier of the facts."  Id.  However, "[t]he triggering information need not detail every aspect of the subsequently alleged fraudulent scheme," and "the date on which knowledge of a fraud will be imputed to a plaintiff can depend on the plaintiff's investigative efforts."  Cohen, 711 F.3d at 361 (internal quotation marks and editing omitted). Therefore, "[i]f the plaintiff makes no inquiry once the duty to inquire arises, knowledge will be imputed as of the date the duty arose."  Id. (internal quotation marks and citation omitted).

Here, Plaintiff alleges that the "conspiracy" and scheme which underlies his claims against the Denton Defendants "commenced on or about July 2014."  (Compl. ¶ 59.)   Plaintiff acknowledges that he first became aware the possible fraud in October 2014 when he questioned Defendant Denton about the loss of money and hired a forensic accountant.  (Compl. ¶ 18.) Plaintiff further alleges that, "in early December 2014[,] [Defendant] Denton retained [Defendants] Timothy B. Glynn and A. Craig Purcell in lieu of my threats to open up a financial can of works on [Defendant] Denton's illegal activities." (Compl. ¶ 19.)  Thus, Plaintiff was aware of any allegedly fraudulent scheme involving the Denton Defendants in 2014.  Moreover, Plaintiff

has purportedly been shut out of the LLCs and the marina since January 2015.  (Compl. ¶ 19.)  He has also consistently been involved in litigation regarding these issues since January of that year. (Id.)  As such, Plaintiff's civil RICO, fraud, and civil conspiracy causes of action all accrued, at the latest, in 2015.  Because Plaintiff did not file this action until February 2022, his civil RICO, fraud, and civil conspiracy claims against the Denton Defendants are barred by the applicable statutes of limitations.

(2)      Plaintiff Fails to State a Claim Under Rule 12(b)(6).

The Denton Defendants marshal three arguments for why Plaintiff's complaint should be dismissed against them on the merits.  First, the Denton Defendants argue Plaintiff lacks standing to file a civil RICO claim because his complaint fails to establish a tangible injury to his business or property.  (Denton Defs.' Mot. 7.)  Second, the Denton Defendants argue that Plaintiff's complaint fails to state a civil RICO claim against them because it does not allege at least two predicate acts of racketeering activity within a ten-year period.  (Denton Defs.' Mot. 8.)  Third, the Denton Defendants argue Plaintiff's complaint must be dismissed because it fails to set forth allegations with sufficiently particularity to state a claim for fraud against them under Federal Rule of Civil Procedure 9(b).  (Denton Defs.' Mot. 9.)  The Court agrees with the Denton Defendants on the latter two scores.

As for standing, to sustain a private right of action under RICO, a plaintiff must plead "[i] the defendant's violation of [18 U.S.C] § 1962, [ii] an injury to the plaintiff's business or property, and [iii] causation of the injury by the defendant's violation."  Commercial Cleaning Servs., L.L.C., 271 F.3d at 380.  While this Court "may also look to public records, including complaints filed in state court, in deciding a motion to dismiss" under Rule 12(b)(6), Blue Tree Hotels Inv. (Canada), Ltd., 369 F.3d at 217, "[i]n the motion to dismiss context, … a court should generally take judicial notice 'to determine what statements [the documents] contain[ ] ... not for the truth of

20

the matters asserted.'" Schubert, 775 F. Supp. 2d at 698 (alterations in original) (quoting Kramer, 937 F.2d at 774).  Although Justice Beasley in his New York State Supreme Court trial decision held that Plaintiff neither paid a single cent for his purported interest in the marina nor even worked at the marina to fulfill what he says were his obligations under the Operating Agreement, see NYS Decision, the Court cannot take such statements for their truth.  See Schubert, 775 F. Supp. 2d at 698.  And Plaintiff alleges in his complaint—albeit conclusorily—that he and his business suffered a tangible harm.  (Compl. ¶¶ 38–40, 43–47.)  Affording Plaintiff's complaint the very liberal construction that it is due, the Court concludes that he has standing to bring a civil RICO claim. See Commercial Cleaning Servs., L.L.C., 271 F.3d at 380.

As for predicate acts of racketeering activity, however, Plaintiff fails to sufficiently allege them to state a civil RICO claim.  To sustain a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must show "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains and interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce."  Williams v. Affinion Grp., LLC, 889 F.3d 116, 123–24 (2d Cir. 2018) (quoting Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir. 1983)).  Section 1961(1) sets forth an exhaustive list of predicate "acts" that can constitute a pattern of "racketeering activity." 18 U.S.C. § 1962(1).  The Plaintiff's complaint alleges no such predicate acts against the Denton Defendants.  Rather, Plaintiff alleges that the defendants filed false declarations in the prior state court action, concealed material facts, (Compl. ¶ 37), and were in a conspiracy "to hide money, cause a no profit situation in the business and pay them with proceeds from the business for their legal fees," and "steal [his] interest," (Compl. ¶ 39.)  Even if Plaintiff's contentions were true, "[a]ll of the alleged fraudulent conduct forming the basis of Plaintiff['s] RICO claim occurred in the process of the State Court Action and therefore cannot serve as a predicate act for a RICO

21

claim." See Kupfer v. Residential Mtge. Solution LLC, 2020 WL 13572821, at 11 n.11 (E.D.N.Y. Nov. 30, 2020) (citing Kim v. Kimm, 884 F.3d 98, 105 (2d Cir. 2018) ("[W]here … a plaintiff alleges that a defendant engaged in a single frivolous, fraudulent, or baseless lawsuit, such litigation activity alone cannot constitute a viable RICO predicate act.")); Rajaratnam v. Motley Rice, LLC, 449 F. Supp. 3d 45, 72 (E.D.N.Y. 2020) ("A civil RICO action in a neighboring federal district is not the appropriate mechanism to seek redress for false statements made in court filings by a litigation adversary."). Accordingly, the Court concludes that Plaintiff's failure to allege a pattern of racketeering activity, among other deficiencies, is fatal to his civil RICO claim against the Denton Defendants.[4] See Williams, 889 F.3d at 123–24.

Moreover, Plaintiff's complaint must be dismissed as to the Denton Defendants for the separate reason that it fails to set forth allegations with sufficiently particularity to state a claim for fraud against them under Federal Rule of Civil Procedure 9(b). As to claims alleging fraud, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard. Such claims must "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). To satisfy Rule 9(b), a complaint must "allege facts that give rise to a strong inference of fraudulent intent." Berman v. Morgan Keegan & Co., 455 F. App'x 92, 95 (2d Cir. 2012) (summary order) (quoting Acito v. IMCERA Grp., Inc., 47 F.3d 47, 52 (2d Cir. 1995)). Specifically, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent," Lerner

---

[4]       In fact, Plaintiff manifestly fails to allege any of the elements of a civil RICO claim with any particularity against the Denton Defendants. Among other deficiencies, Plaintiff's complaint does not adequately plead that the Denton Defendants were part of a RICO enterprise. See First Cap. Asset Mgmt., Inc., 385 F.3d at 173 (quoting Turkette, 452 U.S. at 583). Plaintiff's complaint also fails to plead any legally cognizable predicate acts. See Kalimantano GmbH v. Motion in Time, Inc., 939 F. Supp. 2d 392, 405 (S.D.N.Y. 2013) (quoting 18 U.S.C. § 1961(5)) (citing DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001)). Plaintiff's complaint also fails to adequately plead continuity, and for that reason too does not allege a pattern of racketeering activity. See id. 406 (quoting H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989)).

v. Fleet Bank, N.A., 459 F.3d 273, 292–93 (2d Cir. 2006) (internal quotation marks omitted).  See also United States ex rel. Ladas v. Exelis, Inc., 824 F.3d 16, 25–26 (2d Cir. 2016) ("The purpose of Rule 9(b) is threefold—it is designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." (quoting O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991))).  Moreover, "[a]lthough scienter need not be alleged with great specificity, plaintiffs are still required to plead the factual basis which gives rise to a 'strong inference' of fraudulent intent." Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990) (quoting Beck v. Mfrs. Hanover Tr. Co., 820 F.2d 46, 50 (2d Cir. 1987)).  "Despite the generally rigid requirement that fraud be pleaded with particularity, allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge." Id.  The Second Circuit has emphasized, however, that "[t]his exception to the general rule must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." Id.  Instead, "[w]here pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard." Id.

Here, Plaintiff neither pleaded fraud with sufficient particularity, nor alleged facts to support a strong inference of fraud, to satisfy the Rule 9(b) standard.  That is fatal to Plaintiff's fraud claims against the Denton Defendants.

*        *        *

For the above reasons, the Court GRANTS Defendants Ranee Denton, Craig Purcell, Timothy B. Glynn, and Glynn, Mercep & Purcell LLP's motion to dismiss the claims against them.

      c)     *The Court Grants Defendant Rosen and Defendant Bi-Tech Enterprises, Inc.'s Motion to Dismiss.*

Plaintiff has not made any civil RICO allegations against Defendants Alan B. Rosen and Bi-Yech Enterprise, Inc.' ("Rosen Defendants"). Plaintiff's sole allegation against them is for "computer privacy" violations. (Compl. ¶¶ 55–56.) The Rosen Defendants move to dismiss Plaintiff's complaint under Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6).[5] For the below reasons, the Court grants their motion and dismisses the claims against them.

      (1)     Plaintiff Fails to Properly Serve Under Rule 12(b)(5).

The Rosen Defendants argue that Plaintiff's complaint should be dismissed against them for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5). (Rosen Defs.' Mot. 4.) The Court agrees.

Under Rule 12(b)(5), "[o]nce a defendant raises a challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy." Darden, 191 F. Supp. 2d at 387. "When a court considers a motion to dismiss pursuant to Rule 12(b)(5), it must consider information outside the complaint to determine whether service was sufficient." Hernandez, 2013 WL 5460196, at *4. "In deciding a Rule 12(b)(5) motion, a Court must look to Rule 4, which governs the content, issuance, and service of a summons."[6] DeLuca, 695 F. Supp. 2d at 64. Under

---

[5]     The Court need not, and does not, address the Rosen Defendants' personal jurisdiction argument because it dismisses Plaintiff's claims against them under Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6).

[6]     Pursuant to Fed. R. Civ. P. 4(e), Plaintiff could effectuate service by any of the following means: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process. See FED. R. CIV. P. 4(e). A corporation can be served "(A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." FED. R. CIV. P. 4(h). Under New York law, service upon a corporation requires delivery of the summons "to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." N.Y. C.P.L.R. §

Rule 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court —
on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice
against that defendant or order that service be made within a specified time." FED. R. CIV. P. 4(m).
If the plaintiff can demonstrate good cause, however, a district court must grant a plaintiff an
extension of time for service.  See id.

Here, Plaintiff's Affidavit of Service states "I personally served a true copy of Civil RICO
Complaint on Alan B. Rosen and Bi-Tech Enterprises, Inc."  (Ex. B, ECF No. 46-2 ("Aff. of
Service").)  As a preliminary matter, Plaintiff's service was defective because his complaint was
served without a copy of the summons.  See FED. R. CIV. P. 4(e); see also Bloom v. Democratic
Nat'l Comm., 2002 WL 31496272, at *2 (S.D.N.Y. Nov. 6, 2002) ("Because no summons was
served ... [plaintiff's] attempted service of process was fatally defective."); Trs. of the United Plant
& Prod. Workers Local 175 Benefits Fund v. Mana Constr. Grp., Ltd., 2021 WL 4150803, at *3
(E.D.N.Y. July 30, 2021) (collecting cases), report and recommendation adopted, 2021 WL
4147421 (E.D.N.Y. Sept. 13, 2021); Boahen v. Trifiletti, 2019 WL 688412, at *5 (D. Conn. Feb.
19, 2019).  Even setting aside the failure to serve the summons, Plaintiff's Affidavit of Service of
the complaint is separately deficient as to Defendant Rosen because it fails to identify who was
served on his behalf; indeed, it does not contain a description of the person or corporation allegedly
served with a copy of the complaint.  (See Aff. of Service.)  Against that backdrop, the Court
concludes that Plaintiff has failed to properly serve the Rosen Defendants.

"Good cause is generally found only in exceptional circumstances where the plaintiff's
failure to serve process in a timely manner was the result of circumstances beyond [plaintiff's]
control." Jordan v. Forfeiture Support Assocs., 928 F. Supp. 2d 588, 597 (E.D.N.Y. 2013)

---

311(a)(1). Service is also permitted by personally serving a registered agent or the secretary of state.  See N.Y. Bus.
Corp. Law §§ 306, 307.

(quotations and citation omitted).  In determining whether good cause exists, courts consider "(1) the diligence and reasonableness of the plaintiff's efforts to serve, and (2) prejudice to the defendants from the delay." Tolchin v. Cnty. of Nassau, 322 F. Supp. 3d 307, 311 (E.D.N.Y. 2018), aff'd, 768 F. App'x 60 (2d Cir. 2019).  Plaintiff has not shown good cause for his delay here.

"[A] district court may grant an extension in the absence of good cause, but it is not required to do so." Zapata v. City of N.Y., 502 F.3d 192, 197 (2d Cir. 2007) (emphasis omitted); see Counter Terrorist Grp. U.S. v. N.Y. Mag., 374 F. App'x 233, 234–35 (2d Cir. 2010) (summary order).  To benefit from a discretionary extension, "the plaintiff must ordinarily advance some colorable excuse for neglect." Zapata, 502 F.3d at 198.  At that point, "courts in this Circuit generally consider four factors: (1) whether any applicable statutes of limitations would bar the action once re-filed; (2) whether the defendant[s] had actual notice of the claims asserted in the complaint; (3) whether defendant[s] attempted to conceal the defect in service; and (4) whether defendant[s] would be prejudiced by extending plaintiff's time for service." Vaher v. Town of Orangetown, 916 F. Supp. 2d 404, 420 (S.D.N.Y. 2013) (quotations omitted).

Here, the Court declines to exercise its discretion to grant an extension without good cause. Plaintiff has not offered a colorable excuse for his neglect.  Cf. Zapata, 502 F.3d at 199 (affirming denial of extension of time to serve where plaintiff "neglected to ask for an extension within a reasonable period of time, and ha[d] advanced no cognizable excuse for the delay").  Further, Plaintiff never effected proper service on the Rosen Defendants or asked for an extension of time to do so.  Cf. Carl v. City of Yonkers, 2008 WL 5272722, at *7 (S.D.N.Y. Dec. 18, 2008) (declining to extend time to serve in part because plaintiff's pro se attempt was unsuccessful and he failed to seek any extension of time), aff'd, 348 F. App'x 599 (2d Cir. 2009); Bogle-Assegai v. Connecticut, 470 F.3d 498, 508–09 (2d Cir. 2006); Stewart v. City of New York, 2008 WL 1699797, at *7 (S.D.N.Y. Apr. 9, 2008).  Moreover, Plaintiff has not argued or provided evidence that the Vaher

factors are satisfied.  Finally, allowing Plaintiff additional time to properly serve the Rosen Defendants would be futile, as discussed further below.  See Hahn v. Office & Pro. Emps. Int'l Union, AFL-CIO, 107 F. Supp. 3d 379, 382 (S.D.N.Y. 2015) (declining to allow extension of time for service based on futility) (citing Zapata, 502 F.3d at 196).

Considering the factors commonly weighed in deciding whether to grant a discretionary extension, the Court declines to extend Plaintiff's time to serve the Rosen Defendants and dismisses the complaint under Federal Rule of Civil Procedure 4(m).

(2)    Plaintiff's Claims are Barred by the Statute of Limitations.

Even if the Court looked past Plaintiff's failure to properly serve the Rosen Defendants, Plaintiff's purported civil RICO and computer privacy claims against the Rosen Defendants fail for the additional reason that they are barred by the applicable statutes of limitations.

"Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."  Ellul, 774 F.3d at 798 n.12 (citation omitted); see also Ghartey, 869 F.2d at 162 ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss.").  "Because the statute of limitations is an affirmative defense, the defendant bears the burden of establishing by prima facie proof that the limitations period has expired since the plaintiff's claims accrued."  Overall, 52 F.3d at 403; see also Gonzalez, 651 F.3d at 322 ("[T]he burden is on the defendant to establish when a federal claim accrues.").  If it appears from the face of a complaint that the claims are prima facie time-barred, the burden is on the plaintiff to "plausibly alleg[e] that they fall within an exception to the applicable statute of limitations."  Twersky, 993 F. Supp. 2d at 436, aff'd, 579 F. App'x 7 (summary order) (citing cases).

Civil RICO claims are governed by a four-year statute of limitations which "begins to run when the plaintiff discovers or should have discovered the RICO injury," such that the plaintiff has "actual or inquiry notice of the injury." <u>Merrill Lynch</u>, 154 F.3d at 58, 60.  A plaintiff need not have known of the cause of action for the limitations period to begin; instead, the four-year period begins upon "discovery of the injury, not discovery of the other elements of the claim." <u>Koch</u>, 699 F.3d at 148 (quoting <u>Rotella</u>, 528 U.S. at 555).  Accordingly, "[t]he first step in the statute of limitations analysis is to determine when the [parties] sustained the alleged injury for which they seek redress." <u>Merrill Lynch</u>, 154 F.3d at 59.  The Court "then determine[s] when they discovered or should have discovered the injury and begin[s] the four-year statute of limitations period at that point." <u>Id.</u>

Under New York law, "an action based upon fraud" must be commenced within "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff ... discovered the fraud, or could with reasonable diligence have discovered it."  N.Y. C.P.L.R. § 213(8).  Under N.Y. C.P.L.R. § 213(8), "the six year prong of this limitations period begins to run from the time that a plaintiff actually suffers a loss as a result of the fraudulent conduct." <u>Hemmerdinger</u>, 976 F. Supp. 2d at 408.  Thus, the standard for determining when a Plaintiff is on inquiry notice sufficient to trigger the statute of limitations for a civil RICO claim is like that for fraud under New York law.  <u>See</u> <u>Cohen</u>, 711 F.3d at 361.

It is Plaintiff's burden to show "that the fraud could not have been discovered before the two-year period prior to the commencement of the action." <u>Hemmerdinger</u>, 976 F. Supp. 2d at 408 (quoting <u>Guilbert</u>, 480 F.3d at 147).  A plaintiff's duty to inquire "is triggered by information that relates directly to the misrepresentations and omissions the Plaintiff[ ] later allege[s] in [its] action against the defendants." <u>Cohen</u>, 711 F.3d at 361 (internal quotation marks and citation omitted).  Mere suspicion will not suffice; rather, a plaintiff must have "knowledge of the fraudulent act."

28

Sargiss, 12 N.Y.3d at 532. "Where it does not conclusively appear that a plaintiff had knowledge of facts from which the fraud could reasonably be inferred, a complaint should not be dismissed on motion and the question should be left to the trier of the facts." Id.  However, "[t]he triggering information need not detail every aspect of the subsequently alleged fraudulent scheme," and "the date on which knowledge of a fraud will be imputed to a plaintiff can depend on the plaintiff's investigative efforts."  Cohen, 711 F.3d at 361 (internal quotation marks and editing omitted). Therefore, "[i]f the plaintiff makes no inquiry once the duty to inquire arises, knowledge will be imputed as of the date the duty arose." Id. (internal quotation marks and citation omitted).

As it pertains to the Rosen Defendants, Plaintiff's complaint states: "On or about 2015 through 2016, I was able to get copies of the bank records by visiting a different BNB Bank branch other than Center Moriches in lieu of Denton's good friend VP Julie Pratt of the Center Moriches branch and obtain 2300 dollars in checks written to Bi-Tech from Senix Marine, LLC endorsed by Renee Denton one can only ask why Denton is writing checks to Bi-Tech."  (Compl. ¶ 56.)  Thus, Plaintiff was aware of any allegedly fraudulent scheme involving the Rosen Defendants in 2015. As such, Plaintiff's civil RICO and computer privacy causes of action against the Rosen Defendants accrued in 2015.  Because Plaintiff did not file this action until February 2022, such claims are barred by the applicable statutes of limitations.

(3)    Plaintiff Fails to State a Claim Under Rule 12(b)(6).

Even if it were necessary to address the merits of Plaintiff's claims, which it need not, the Court would dismiss the civil RICO and computer privacy claims levied against the Rosen Defendants under Federal Rule of Civil Procedure 12(b)(6).

(a)    <u>Computer Privacy Violations</u>

Affording Plaintiff's complaint the liberal construction it is due, the Court construes Plaintiff's allegations of "computer privacy" violations against the Rosen Defendants to raise fraud claims under New York law.

Under New York law, the elements of a claim for fraud are: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." <u>Crigger v. Fahnestock & Co.</u>, 443 F.3d 230, 234 (2d Cir. 2006); <u>accord</u> <u>Albert Apartment Corp. v. Corbo Co.</u>, 582 N.Y.S.2d 409, 410 (1st Dep't 1992). "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." FED. R. CIV. P. 9(b). "Rule 9(b) is designed to further three goals: (1) providing a defendant fair notice of plaintiff's claim, to enable preparation of defense; (2) protecting a defendant from harm to his reputation or goodwill; and (3) reducing the number of strike suits." <u>DiVittorio v. Equidyne Extractive Indus.</u>, 822 F.2d 1242, 1247 (2d Cir. 1987). Further, subject to an exception not relevant here, "Rule 9(b) pleadings cannot be based upon information and belief." <u>Id.</u> (citing <u>Segal v. Gordon</u>, 467 F.2d 602, 608 (2d Cir. 1972)). Lastly, "fraud allegations ought to specify the time, place, speaker, and content of the alleged misrepresentations." <u>Id.</u> (citing <u>Luce v. Edelstein</u>, 802 F.2d 49, 55 (2d Cir. 1986). "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." <u>Id.</u>; <u>see also</u> <u>Yung v. Lee</u>, 160 F. App'x 37, 42 (2d Cir. 2005).

Here, Plaintiff's allegations with respect to the Rosen Defendants are impermissibly "framed … entirely on information and belief." <u>Id.</u>; <u>see also</u> <u>Segal v. Gordon</u>, 467 F.2d 602, 608 (2d Cir. 1972) (holding conclusory allegations do not meet the Rule 9(b) standard for specificity

30

in fraud pleading because they "violate the general rule that Rule 9(b) pleadings cannot be based on information and belief") (internal quotation marks omitted).   While this rule is relaxed as to matters peculiarly within the adverse parties' knowledge, the allegations must then be accompanied by a statement of the facts upon which the belief is founded.  See Segal, 467 F.2d at 608.  Here, no such statement of facts is provided by Plaintiff.  For example, Plaintiff's complaint states in relevant part:

> "It is my information and belief that [the Rosen Defendants have] gone into my icloud storge of my computer private and legal works writing briefs motions etc. etc. etc.  On or about 2015 through 2016[,] I was able to get copies of the bank records by visiting a different BNB Bank branch other than Center Moriches in lieu of Denton's good friend VP Julie Pratt of the Center Moriches branch and obtain 2300 dollars in checks written to Bi-Tech from Senix Marine, LLC endorsed by Renee Denton one can only ask why Denton is writing checks to Bi-Tech."

(Compl. ¶ 56.)

Such allegations, without more, are insufficiently particular to state a claim for fraud against the Rosen Defendants under Federal Rule of Civil Procedure 9(b).  See Star Auto Sales of Queens LLC, 2022 WL 784520, at *4.  Indeed, Plaintiff's complaint does not allege that either of the Rosen Defendants made any representations—much less any fraudulent statements—to Plaintiff in any matter.  See id.  Courts routinely find complaints run afoul of Rule 9(b) when a plaintiff fails to "state where and when" any of the allegedly fraudulent statements were made. Nakahata, 723 F.3d at 197; see also Star Auto Sales of Queens LLC, 2022 WL 784520, at *4. Moreover, Plaintiff's complaint does not allege that the Rosen Defendants were aware of, or had knowledge of, any purported fraud by any of the defendants.  (Compl. ¶ 56.)  In fact, Plaintiff's complaint does not mention any interactions, of any kind, between the Rosen Defendants and Plaintiff.   Instead, Plaintiff's complaint merely alleges, without any basis, that the Rosen

31

Defendants "went into" his computer.  (Compl. ¶ 56.)  Considering this sole allegation, Plaintiff has failed to plead fraud with the requisite specificity.[7]

(b)    <u>Civil RICO</u>

Plaintiff fails to plead the elements of a civil RICO claim against the Rosen Defendants. To sustain a private right of action under RICO, a plaintiff must plead "[i] the defendant's violation of [18 U.S.C] § 1962, [ii] an injury to the plaintiff's business or property, and [iii] causation of the injury by the defendant's violation."  <u>Commercial Cleaning Servs., L.L.C.</u>, 271 F.3d at 380.  To plead a substantive civil RICO claim under 18 U.S.C. § 1962(c), "a plaintiff must show that a person engaged in [i] conduct [ii] of an enterprise [iii] through a pattern [iv] of racketeering activity."[8] <u>FXDirectDealer, LLC</u>, 720 F.3d at 120 (internal quotation marks omitted); <u>see generally</u> <u>In re Tether & Bitfinex Crypto Asset Litig.</u>, 576 F. Supp. 3d at 114–27.  "A failure to plead any element of a claim, of course, requires its dismissal."  <u>Black</u>, 619 F. Supp. at 330.  Here, the Rosen Defendants argue that Plaintiff's civil RICO claim, does not adequately allege numerous elements of a substantive RICO claim.  The Court agrees.

As a preliminary matter, Plaintiff manifestly fails to allege any of the elements of a civil RICO claim with any particularity.

---

[7]    Even if Plaintiff's complaint could be construed to plead that the Rosen Defendants had knowledge of the other defendants' alleged fraud, which it cannot, where a plaintiff attempts to use aiding and abetting or conspiracy allegations to sweep in other defendants into a primary fraud claim, the complaint must provide details of each defendant's actions rather than bald, conclusory allegations of knowledge and assistance.  <u>See</u> <u>Silverman Partners, L.P. v. First Bank</u>, 687 F. Supp. 2d 269, 288 (E.D.N.Y. 2010) (granting motion to dismiss where plaintiffs' conclusory allegation of defendants' knowledge of the alleged fraud was insufficient to meet the 9(b) pleading requirements).

[8]    As to RICO claims predicated on alleged fraud, "Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard."  <u>Black</u>, 619 F. Supp. at 342.  Such claims must "state with particularity the circumstances constituting fraud."  FED. R. CIV. P. 9(b).  To satisfy Rule 9(b), a complaint must "allege facts that give rise to a strong inference of fraudulent intent."  <u>Berman</u>, 455 F. App'x at 95 (summary order) (quoting <u>Acito</u>, 47 F.3d at 52).  Specifically, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent," <u>Lerner</u>, 459 F.3d at 292–93 (internal quotation marks omitted).  Plaintiff's complaint does not allege any fraud whatsoever against the Rosen Defendants.

32

More specifically, and among other deficiencies, Plaintiff's complaint does not adequately plead that the Rosen Defendants were part of a RICO enterprise. "The Supreme Court has explained that a RICO enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct,' the existence of which is proven 'by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" First Cap. Asset Mgmt., Inc., 385 F.3d at 173 (quoting Turkette, 452 U.S. at 583). Here, Plaintiff's only allegations regarding the Rosen Defendants are that they hacked into his computer. (Compl. ¶ 56.) Without more, Plaintiff has failed to establish that the Rosen Defendants participated in a RICO enterprise. See First Cap. Asset Mgmt., Inc., 385 F.3d at 174 (concluding that plaintiffs did not allege an enterprise where they "failed to provide ... solid information regarding the 'hierarchy, organization, and activities' of this alleged association-in-fact enterprise," from which the court "could fairly conclude that its 'members functioned as a unit'" (quoting United States v. Coonan, 938 F.2d 1553, 1560–61 (2d Cir. 1991))). Because Plaintiff's complaint does not plausibly allege the Rosen Defendants were a part of a RICO enterprise, its RICO claim against them fails.[9] See D. Penguin Bros., 2014 WL 982859, at *4

---

[9]    A RICO enterprise must also be "separate from the pattern of racketeering activity" and "distinct from the person conducting" the enterprise's affairs. First Cap. Asset Mgmt., Inc., 385 F.3d at 173. A RICO enterprise may be a lawful entity or an association-in-fact. See Boritzer v. Calloway, 2013 WL 311013, at *5 (S.D.N.Y. Jan. 24, 2013). In positing an enterprise comprising many otherwise disparate individuals, Plaintiff's complaint necessarily pursues a theory that the three constituted an association-in-fact: "a group of persons associated together for the common purpose of engaging in a course of conduct." Turkette, 452 U.S. at 583. To qualify as such, a grouping must have "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle v. United States, 556 U.S. 938, 946 (2009). As the Rosen Defendants correctly parse the complaint, it fails to viably plead all three of these features.

Moreover, Plaintiff fails to establish that the Rosen Defendants participated in a RICO scheme. "A person may not be held liable merely for taking directions and performing tasks that are 'necessary and helpful to the enterprise,' or for providing 'goods and services that ultimately benefit the enterprise.'" U.S. Fire Ins. Co., 303 F. Supp. 2d at 451–52 (citations omitted). Instead, "'the RICO defendant must have played 'some part in directing [the enterprise's] affairs.'" BMO Harris Bank, N.A., 258 F. Supp. 3d at 306 (internal citation omitted). Here, Plaintiff entirely fails to plead that the Rosen Defendants played any part in "directing" the alleged enterprises' affairs. Plaintiff merely alleges that the Rosen Defendants hacked into his computer. (Compl. ¶ 56.) Considering such vague and sweeping generalities, the Court could dismiss Plaintiff's civil RICO claim on this ground as well.

("The heart of any civil RICO claim is the enterprise.  There can be no RICO violation without one."), aff'd, 587 F. App'x 663, 2014 WL 5293242 (2d Cir. Oct. 16, 2014) (summary order).

In an independent challenge to the substantive RICO claim, the Rosen Defendants argue that Plaintiff's complaint fails to plead any legally cognizable predicate acts.  The Court agrees.  "To be liable under the RICO statute, a defendant must commit 'at least two acts of racketeering activity.'" Kalimantano GmbH v. Motion in Time, Inc., 939 F. Supp. 2d 392, 405 (S.D.N.Y. 2013) (quoting 18 U.S.C. § 1961(5)) (citing DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001)).  The statute broadly defines "racketeering activity" "to encompass a variety of state and federal offenses including, inter alia, murder, kidnapping, gambling, arson, robbery, bribery and extortion." DeFalco, 244 F.3d at 306 (citing 18 U.S.C. § 1961(1)).  Fatal to Plaintiff's claim twice over, he alleges no racketeering activity by the Rosen Defendants.

The Rosen Defendants also argue that Plaintiff's complaint fails to adequately plead continuity, and for that reason too does not allege a pattern of racketeering activity.  "For such a pattern to exist, the acts of racketeering activity 'must be related and continuous.'"  Kalimantano, 939 F. Supp. 2d at 406 (quoting H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989)). "'Continuity' is both a closed-and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."  H.J. Inc., 492 U.S. at 241.  A complaint that properly alleges either satisfies the continuity requirement of the pattern element. See Kalimantano, 939 F. Supp. 2d at 406; Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC, 2012 WL 1231775, at *7 (S.D.N.Y. Apr. 12, 2012) (citing First Cap. Asset Mgmt., Inc., 385 F.3d at 181)).  "Open-ended continuity is established when 'an inherently unlawful act is performed at the behest of an enterprise whose business is racketeering activity [as] there is a threat of continued criminal activity.'"  Ritter v.

Klisivitch, 2008 WL 2967627, at *12 (E.D.N.Y. July 30, 2008) (quoting DeFalco, 244 F.3d at 323) (alteration in Ritter).

Plaintiff does not plead closed-ended continuity.  He appears to contend, however, that it pleads open-ended continuity because the enterprise's goals—"[a] well organized scheme to mislead the Suffolk Supreme Court and the Plaintiff Dale Robert Javino"—have yet to be achieved. (Compl. ¶¶ Nature of the Action.)  Because the Court has found that the activities Plaintiff names have not been plausibly pleaded as racketeering predicate acts, it follows that his complaint also fails to plead continuity.  See Black, 619 F. Supp. at 346.  Put differently, having not plausibly pleaded qualifying activity, Plaintiff has not plausibly pleaded a threat of continuing RICO activity from the Rosen Defendants.

(c)   <u>Civil Conspiracy</u>

Finally, the Rosen Defendants argue that Plaintiff's complaint does not viably allege that they engaged in a civil conspiracy or a civil RICO conspiracy.  The Court agrees and concludes that Plaintiff's cause of action for civil conspiracy against the Rosen Defendants must be dismissed.

Although civil conspiracy is not an independent tort, but rather a means for imposing liability on non-actors, a plaintiff seeking to impose liability under this theory must, in addition to alleging an underlying tort, allege the following elements: "(1) a corrupt agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury."  Cagan, 2012 WL 1071275, at *4 (E.D.N.Y. Mar. 28, 2012); see also Bigio, 675 F.3d at 176.  As such, to the extent Plaintiff attempts to bring a separate cause of action for civil conspiracy against the Rosen Defendants, that cause of action must be dismissed.  See Douyon, 894 F. Supp. 2d at 273.

To the extent Plaintiff is attempting to plead a cause of action for a civil RICO conspiracy, that cause of action also fails. "To plead such a conspiracy, a complaint must allege that a defendant agreed to participate in the affairs of the enterprise through a pattern of racketeering activity." Black, 619 F. Supp. 3d at 329. As the Second Circuit has stated, "[b]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." Hecht, 897 F.2d at 25. And where a RICO conspiracy claim does not adequately plead an agreement to conduct which, if completed, would satisfy the elements of the substantive RICO statute, "the conspiracy claim under § 1962(d) also fails." BWP Media USA Inc., 69 F. Supp. 3d at 363 (citation omitted). However, "the existence of a RICO enterprise is not a required element of a RICO conspiracy claim." Bello, 579 F. App'x at 17 (summary order) (citing Applins, 637 F.3d at 76).

"A failure to plead any element of a claim, of course, requires its dismissal." Black, 619 F. Supp. 3d at 330. Here, Plaintiff has not pleaded that the Rosen Defendants ever agreed to participate in any racketeering activity. As explained above, the Rosen Defendants allegedly hacked into Plaintiff's computer. (Compl. ¶ 56.) Indeed, Plaintiff does not allege that the Rosen Defendants were even aware of some larger RICO conspiracy. And Plaintiff's complaint is entirely devoid of detail regarding the nature and form of an agreement to commit any predicate acts between the Rosen Defendants. Indeed, the Plaintiff's civil RICO conspiracy allegations, as pleaded, are entirely derivative of its allegations of a substantive RICO violation. See First Cap. Asset Mgmt., Inc., 385 F.3d at 164 ("[B]ecause Plaintiffs' RICO conspiracy claims are entirely dependent on their substantive RICO claims, we also concur in the District Court's dismissal of the RICO conspiracy claims.") Plaintiff's complaint does not adequately plead, inter alia, viable RICO predicate acts, a pattern of racketeering, or a relationship among the alleged enterprise participants and the Rosen Defendants. It follows that Plaintiff's complaint has not adequately

pleaded an agreement among these same persons to facilitate a pattern of racketeering activity. The Court accordingly dismisses the civil RICO conspiracy claim against the Rosen Defendants.

### 3.    Leave to Amend.

Lastly, each set of defendants argue that the Court should dismiss Plaintiff's complaint with prejudice.  (BNB Defs.' Mot. 9; Rosen Defs.' Mot. 18; Denton Defs.' Mot. 10.)  District courts generally grant a pro se plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile.  See Dollinger v. N.Y. State Ins. Fund, 726 F. App'x 828, 831 (2d Cir. 2018) ("[L]eave to amend can be denied if amendment would be futile."); see also Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [the pro se plaintiff's] causes of action is substantive; better pleading will not cure it.  Repleading would thus be futile.  Such a futile request to replead should be denied.").  Indeed, "[t]he Second Circuit has instructed courts not to dismiss a [pro se] complaint 'without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" Howard v. Brown, 2018 WL 3611986, at *6 (S.D.N.Y. July 26, 2018) (quoting Shabazz v. Bezio, 511 F. App'x 28, 31 (2d Cir. 2013)); see also Shomo, 579 F.3d at 183.  An opportunity to replead is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."  Cuoco, 222 F.3d at 112; see also Cortec Indus. Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.")  The "dismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."  Boykin, 521 F.3d at 216.

In an abundance of caution considering his pro se status, the Court will grant Plaintiff leave to file an amended complaint.  Plaintiff may file an amended complaint consistent with this Order **within 45 days of entry of this Order**.  Plaintiff is not required to file an amended complaint—

but if he fails to do so, this action will be dismissed under 28 U.S.C. § 1915(e)(2)(B).  **The Court advises Plaintiff to limit his submission to no more than 20 pages.**

Plaintiff must provide a short and plain statement of the relevant facts supporting its claims against the defendants.  If Plaintiff has an address for any named defendant, Plaintiff must provide it.  Plaintiff should include all the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the amended complaint states a claim for relief.  That information should include:

1. The names and titles of all relevant people or entities;

2. A description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

3. A description of the injuries Plaintiff suffered; and

4. The relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated his federally protected rights and how; when and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.

**B.      Cross-Motion for Summary Judgment**

**1.      Applicable Law.**

The standard for granting summary judgment is well established.  Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10] FED. R. CIV. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely disputed "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

While the moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact," Celotex Corp., 477 U.S. at 323, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001).  Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins., 472 F.3d 33, 41 (2d Cir. 2006) (quoting FED. R. CIV. P. 56(e)).

When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.  See Vt. Teddy Bear Co., v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  In considering "what may reasonably be inferred" from evidence in the record, however, the Court should not afford the non-moving party the benefit of "unreasonable inferences, or inferences at war with undisputed facts." Cnty. of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1318 (2d Cir. 1990) (internal quotation omitted).  Moreover, "[t]hough [the Court] must accept as true the allegations of the party defending against the summary judgment motion, . . .  conclusory statements, conjecture, or speculation by the party resisting the motion

---

[10]      The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact.  See FED. R. CIV. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) . . . chang[es] only one word — genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination.").  This Court uses the post-amendment standard but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refer to "genuine issues of material fact."

will not defeat summary judgment." Kulak v. City of N.Y., 88 F.3d 63, 71 (2d Cir. 1996) (internal citation omitted) (citing Matsushita, 475 U.S. at 587).

> **2.      Analysis.**

Plaintiff's cross-motion for summary judgment fails for multiple, independent reasons.

First, while the Federal Rules of Civil Procedure permit a party to move for summary judgment "at any time," FED. R. CIV. P. 56(b), no party should be "unjustly deprived of [its] ability to meet [its] burden of production" at summary judgment. Trebor Sportswear Co., Inc. v. The Limited Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989). Instead, the non-moving party is entitled to "an opportunity to discover information that is essential to [its] opposition" to the summary judgment motion. Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986)). Accordingly, "courts routinely deny motions for summary judgment as premature when discovery over relevant matters is incomplete." Toussie v. Allstate Insurance Co., 213 F. Supp. 3d 444, 445 (E.D.N.Y. 2016); see also Kaiser v. Fairfield Properties, 2022 WL 17412405, at *8–9 (E.D.N.Y. Feb. 11, 2022) (recommending denial of plaintiff's motion for summary judgment as premature where no discovery had occurred and defendants had filed a motion to dismiss under Rule 12(b)(6)). Here, Plaintiff's motion is premature because discovery has not yet begun and Defendants' motion to dismiss is granted. Defendants have not submitted their answers to Plaintiff's complaint and discovery has not even commenced. Accordingly, because Defendants— the non-moving parties—have not yet had the opportunity to conduct any discovery and because their motion to dismiss under Rule 12(b)(6) was pending at the time of the instant summary judgment, Plaintiff's motion for summary judgment is premature and must be denied. See Trebor Sportswear, 865 F.2d at 511; see also Toussie, 213 F. Supp. 3d at 445; Kaiser, 2022 WL 17412405, at *8–9.

Second, although Plaintiff, as a <u>pro se</u> litigant, should be "granted special leniency regarding procedural matters," <u>LeSane v. Hall's Sec. Analyst, Inc.,</u> 239 F. 3d 206, 209 (2d Cir. 2001), he must nevertheless comply with the Local Rules of this District. <u>Ally v. Sukkar</u>, 128 F. App'x 194, 195 (2d Cir. 2005) (stating a <u>pro se</u> plaintiff must also "still comply with the relevant rules of procedural and substantive law") (citing <u>Traguth v. Zuck</u>, 710 F.2d 90, 95 (2d Cir. 1983)). Here, Plaintiff has not filed a notice of motion as required by Local Rule of Civil Procedure 7(a)(1). Nor has he complied with Local Rule 56(a)(1).[11]  Relevant here, <u>pro se</u> parties and represented parties alike must comply with this District's requirements for motions for summary judgment; if they do not, the district court may, in its discretion, deny their motion or impose other sanctions. <u>See Tross v. Ritz Carlton Hotel Co.</u>, 928 F. Supp. 2d 498, 503 (D. Conn. 2013) ("In this Circuit, a movant's failure to comply with a district court's relevant local rules on a motion for summary judgment permits, but does not require, a court to dispose of that motion.") (citing <u>Tota v. Bentley</u>, 379 F. App'x 31, 32–33 (2d Cir. 2010)).  This Court exercises such discretion and denies Plaintiff's cross-motion on this alternative basis for failure to comply with this District's requirements.

Finally, this Court may deny as moot Plaintiff's cross-motion for summary judgment because it just granted the Defendants' motion to dismiss.  <u>See Kristoffersson on behalf of R.R. v. Port Jefferson Union Free Sch. Dist.</u>, 2024 WL 3385137, at *5 n.4 (2d Cir. July 12, 2024) (citing

---

[11]     Local Rule 56.1 of the Eastern District of New York requires that "[u]pon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." E.D.N.Y. L.R. 56.1(a).  Each statement of fact must "be followed by a citation to evidence which would be admissible." E.D.N.Y. L.R. 56.1(d).  Local Rule 56.1 further provides that parties opposing a motion for summary judgment "shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." E.D.N.Y. L.R. 56.1(b).  Rule 56.1 is strict: "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." E.D.N.Y. L.R. 56.1(c); <u>see also</u> <u>T.Y. v. N.Y.C. Dep't of Educ.</u>, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible.").

McCracken v. Verisma Sys., Inc., 91 F.4th 600, 609 (2d Cir. 2024) ("[I]t was not error, but rather an exercise of efficiency, to first decide the motion for judgment on the pleadings, because if the court concluded (as it did) that the [plaintiffs'] allegations, taken as true, did not state a claim, there would be no value in assessing the evidence on a summary judgment motion.  And based on our foregoing conclusion that the [plaintiffs] failed to state a claim, the district court also did not err in denying their cross-motion for summary judgment as moot."))

Accordingly, Plaintiff's cross-motion for summary judgment is DENIED without prejudice.

### III.  CONCLUSION

For the above reasons, Defendants' Motions to Dismiss Plaintiff's complaint are GRANTED, and Pro Se Plaintiff's complaint is thereby DISMISSED without prejudice.  Accordingly, Pro Se Plaintiff's Cross-Motion for Summary Judgment is DENIED without prejudice.

Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above.  Plaintiff must submit the amended complaint to this Court's Pro Se Intake Office **within 45 days of the date of this Order**, caption the document as a "Amended Complaint," and label the document with docket number 22-cv-01072-JMA-ARL.  If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the Court will direct the Clerk of Court to enter judgment in this case.

Should Plaintiff seek leave to appeal in forma pauperis ("IFP"), the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore IFP status is denied for the purpose of any appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 40, 42, 45, 46, and 48.  The Clerk of the Court is moreover directed to mail a copy of this Memorandum and Order to Pro Se Plaintiff at his address of record and file proof of service on the docket.

**SO ORDERED.**

Dated:   September 13, 2024
             Central Islip, New York

_____
/s/ JMA
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE

43